**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANNA CARELLAS, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 3-23-CV-01062 |
| | : | |
| GEISINGER WYOMING VALLEY | : | (JUDGE MANNION) |
| MEDICAL CENTER, | : | |
| | : | |

## <ins>DEFENDANT GEISINGER WYOMING VALLEY MEDICAL CENTER'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</ins>

> Anthony (T.J.) Andrisano, Esq.
> PA I.D. No. 201231
> Alyssa K. Stouder, Esq.
> PA I.D. No. 324468
> Buchanan Ingersoll & Rooney PC
> 409 North Second Street, Suite 500
> Harrisburg, PA  17101
> Phone: (717) 237-4800
> *Attorneys for Defendant*

Date:  April 16, 2024

# TABLE OF CONTENTS

I. INTRODUCTION ..............................................................................................1

II. STATEMENT OF CASE ..................................................................................2

  A.  Facts ...............................................................................................................2

  B.  Relevant Procedural History.........................................................................2

III. STATEMENT OF QUESTION PRESENTED................................................2

IV. STANDARD OF REVIEW .............................................................................2

V. ARGUMENT ....................................................................................................4

  A.  Plaintiff's religious discrimination claims under Title VII and the
      PHRA fail. .....................................................................................................4

    1.    Plaintiff's failure to accommodate theory fails.........................................4

    2.    Plaintiff's disparate treatment theory fails. .............................................12

    3.    Plaintiff's quid pro quo theory fails. .......................................................17

    4. Plaintiff's retaliation claims under Title VII/the PHRA fail as a matter of
       law..............................................................................................................20

VI. CONCLUSION................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abramson v. William Paterson College of N.J.*, 260 F.3d 265 (3d Cir. 2001)........19

*Al Refat v. Franklin Fin. Servs. Corp.*, 2021 WL 2588789 (M.D. Pa. 2021)..........23

*Atkinson v. LaFayette Coll.*, 460 F.3d 447 (3d Cir. 2006) .......................................4

*Bey v. Pocono Med. Ctr.*, 2023 WL 8602284 (M.D. Pa. 2023)..............................24

*Blackwell v. Lehigh Valley Health Network*, 2023 WL 5807840 (E.D. Pa. 2023)...6, 19

*Brown v. J. Kaz, Inc.*, 581 F.3d 175 (3d Cir. 2009).....................................................4

*Bushra v. Main Line Health, Inc.*, 2023 WL 9005584 (E.D. Pa. 2023) ....................5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..........................................................3

*Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210 (3d Cir. 2015) ................3

*Colgan v. Fisher Sci. Co.*, 935 F.2d 1407 (3d Cir. 1991 .........................................20

*Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016) .................................13

*Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130 (3d Cir. 2006) ........................................................................................................................23

*Fallon v. Mercy Cath. Med. Ctr.*, 877 F.3d 487 (3d Cir. 2017) ...........................4, 5

*Faush v. Tuesday Morning, Inc.*, 808 F.3d 208 (3d Cir. 2015) ................................4

*Federoff v. Geisinger Clinic*, 571 F.Supp.3d 376 (M.D. Pa. 2021)......................4, 6

*Finkbeiner v. Geisinger Clinic*, 623 F.Supp.3d 458 (M.D. Pa. 2022)......................4

*Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561 (3d Cir. 2002) ..................................4

*Goosby v. Johnson & Johnson Med. Inc.*, 228 F.3d 313 (3d Cir. 2000) .......... 14, 15

*Jones v. School Dist. of Philadelphia*, 198 F.3d 403 (3d Cir. 1999)......................13

*Kopko v. Lehigh Valley Health Network*, 776 Fed.Appx. 768 (3d Cir. 2019) . 20, 21

*Makky v. Chertoff*, 541 F.3d 205 (3d Cir. 2008)......................................13

*Mammen v. Thomas Jefferson Univ.*, 462 F.Supp.3d 518 (E.D. Pa. 2020).............20

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)....................................13

*Ogden v. Keystone Residence*, 226 F.Supp.2d 588 (M.D. Pa. 2002) ............... 13, 14

*Sarullo v. U.S. Postal Service*, 352 F.3d 789 (3d Cir. 2003)...................................13

*Shelton v. Univ. of Med. and Dentistry of N.J.*, 223 F.3d 220 (3d Cir. 2000)...........5

*Slagle v. County of Clarion*, 435 F.3d 262 (3d Cir. 2006) ....................................22

*Trap Rock Industries, Inc. v. Local 825, Int'l*, 982 F.2d 884 (3d Cir. 1992) ............3

*Waiters v. Parsons*, 729 F.2d 233 (3d Cir. 1984)....................................................21

*Wallace v. City of Philadelphia*, 2010 WL 1730850 (E.D. Pa. 2010).....................19

*Webb v. City of Philadelphia*, 562 F.3d 256 (3d Cir. 2009)......................................4

*Webb v. Merck & Co., Inc.*, 450 F.Supp.2d 582 (E.D. Pa. 2006)...........................23

*Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315 (3d Cir. 2008) ......4

*Winans v. Cox Auto., Inc.*, 669 F.Supp.3d 394 (E.D. Pa. 2023)...............................4

## Rules

FED.R.CIV.P. 56(a)......................................................................................................2

*Unpublished opinions are attached hereto as Exhibit A.*

**DEFENDANT'S BRIEF IN SUPPORT OF**
**ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to FED.R.CIV.P. 56, Defendant Geisinger Wyoming Valley Medical Center ("Geisinger"), by and through its undersigned counsel, Buchanan Ingersoll & Rooney PC, hereby submits this Brief in Support of its Motion for Summary Judgment.

## I.    INTRODUCTION

The claims and allegations contained in Plaintiff's Complaint are legally unsupported and, at times, contradictory to Plaintiff's own testimony. Plaintiff brings two claims: unlawful employment discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and a related state law claim pursuant to the Pennsylvania Human Relations Act ("PHRA"). More specifically, Plaintiff appears to claim Geisinger engaged in unlawful employment discrimination on the basis of religion under the legal theories of "failure to accommodate," "disparate treatment," "*quid pro quo*," and "retaliation."

The specific allegations Plaintiff asserts to support these claims are difficult to follow; some of Plaintiff's allegations are at odds with others; and **all** of Plaintiff's allegations are contradicted by her own testimony and the unambiguous documentation of record. What is clear is **Plaintiff agrees with Geisinger** with respect to all material facts and she has not and cannot point to even an iota of evidence illustrating Geisinger took any action against her **as a result of her**

1

**religion**. Indeed, Plaintiff indisputably admits Geisinger provided her with the only religious accommodation she requested. Accordingly, Plaintiff's own testimony establishes Geisinger is entitled to summary judgment as a matter of law.

## II.    STATEMENT OF CASE

### A. Facts

Geisinger concurrently filed a Statement of Undisputed Material Facts (hereinafter, "SMF") and the same is incorporated herein by citing to "SMF¶__."

### B. Relevant Procedural History

Plaintiff initiated this litigation on December 28, 2022, alleging claims under Title VII and the PHRA. (SMF¶1). Fact discovery closed on February 16, 2022. (SMF¶3). Geisinger timely moves for summary judgment.

## III.    STATEMENT OF QUESTION PRESENTED

### A. Whether Plaintiff's religious discrimination claims under Title VII and the PHRA fail as a matter of law?

**Suggested Answer: Yes**

## IV.    STANDARD OF REVIEW

Summary judgment is appropriate where no genuine disputes of material fact exist, and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(a). Summary judgment is properly entered against "the party who fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Summary judgment is not a "disfavored procedural shortcut," but rather, it is an appropriate tool for seeking a "just, speedy, and inexpensive determination" of the matter. *Celotex Corp.*, 477 U.S. at 327. It is designed to "dispose of factually unsupported claims." *Id*. Once the moving party has carried its burden under Rule 56, its opponent "must do more than simply show that there is some metaphysical doubt as to the material facts" in question. *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 218 (3d Cir. 2015). This means the party opposing summary judgment must do more than rest upon mere allegations, general denials, or vague statements. *See, e.g., Trap Rock Industries, Inc. v. Local 825, Int'l*, 982 F.2d 884, 890 (3d Cir. 1992).

## V.    ARGUMENT

### A. Plaintiff's religious discrimination claims under Title VII and the PHRA[1] fail.

#### 1. Plaintiff's failure to accommodate theory fails.

To establish a *prima facie* case of failure to accommodate a religious belief, Plaintiff must show "that (1) [she] held a sincere religious belief that conflicted with a job requirement, (2) [she] informed her employer of the conflict, and (3) [she was] disciplined for failing to comply with the conflicting request." *Finkbeiner v. Geisinger Clinic*, 623 F.Supp.3d 458, 465 (M.D. Pa. 2022) (citing *Federoff v. Geisinger Clinic*, 571 F.Supp.3d 376, 384 (M.D. Pa. 2021)) (quoting *Fallon v. Mercy Cath. Med. Ctr.*, 877 F.3d 487, 490 (3d Cir. 2017)).

If Plaintiff is able to establish these factors, the burden shifts to the employer to show either it made a good-faith effort to reasonably accommodate the religious belief, or such an accommodation would work an undue hardship upon the employer and its business. *Webb v. City of Philadelphia*, 562 F.3d 256, 259 (3d Cir. 2009);

---

[1] "Claims brought under the [PHRA]...[are] 'interpreted coextensively with Title VII claims.'" *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 213 (3d Cir. 2015) (quoting *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 179 n. 1 (3d Cir. 2009)); *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n. 6 (3d Cir. 2006). The Third Circuit applies the same standards to Title VII and PHRA claims for religious discrimination and retaliation. *See Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 318-19 (3d Cir. 2008); *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002); *Winans v. Cox Auto., Inc.*, 669 F.Supp.3d 394, 399 (E.D. Pa. 2023). As such, all arguments with respect to Plaintiff's Title VII claim apply with equal force to her PHRA claim.

*Shelton v. Univ. of Med. and Dentistry of N.J.*, 223 F.3d 220, 224 (3d Cir. 2000).

Plaintiff cannot establish even a *prima facie* case of religious discrimination.

> a. <u>Plaintiff Cannot establish a *prima facie* case of failure to accommodate.</u>

Where plaintiff-employees raise failure to accommodate claims related to their religious objections to defendant-employers' COVID-19 vaccine policies, Third Circuit Courts require plaintiffs to show: (1) they held a sincere religious belief that conflicted with the employer's COVID-19 vaccination requirement; (2) they informed the employer of this conflict; and (3) they were disciplined for failing to comply with the conflicting vaccination requirement. *Bushra v. Main Line Health, Inc.*, 2023 WL 9005584 at *5 (E.D. Pa. 2023); *Fallon*, 877 F.3d at 490.

Plaintiff cannot establish any of the three prongs of her *prima facie* case. Indeed, in 2021, Plaintiff notified Geisinger that her religious beliefs prevent her from receiving the COVID-19 vaccine. (SMF¶¶38-39). Plaintiff acknowledges—in both her Complaint and her testimony—that Geisinger granted her request to be exempt from its COVID-19 vaccination requirement, and allowed her to remain employed without receiving the COVID-19 vaccine. (SMF ¶¶40-41; *Appx. 2 – 3*). This is the only accommodation Plaintiff requested and the only "conflict" Plaintiff informed Geisinger of. And, as it was granted, Plaintiff cannot establish she was disciplined for failing to comply with the conflicting vaccination requirement.

Plaintiff further admits that, as part of the granting of her religious accommodation and to ensure the safety of patients, employees and the public, she was required to comply with alternate steps, including regular testing and masking. (SMF¶¶ 23,42). Specific to the testing requirement, all employees exempt from the vaccine, including Plaintiff, were required to perform self-testing for COVID-19 and submit the self-testing results to Geisinger every Tuesday/Thursday. (SMF¶¶16-17).

Plaintiff acknowledges she received at least six emails or letters from Geisinger reminding her of her obligation to submit test results each Tuesday/Thursday, and that she understood her failure to submit them on three occasions would result in her separation. (SMF¶¶47,50,56,69,72,80). Knowing this, Plaintiff admits she **failed to submit her test results on three occasions**, and was separated from employment with Geisinger for **that reason**, and **not for** failing to receive the COVID-19 vaccine. (SMF ¶¶89-91).

At **no point** does Plaintiff contend she had any religious objection to performing the required COVID-19 **tests**. *See Blackwell v. Lehigh Valley Health Network*, 2023 WL 5807840 at *2 (E.D. Pa. 2023) ("[The p]laintiff objected to the nasal swab testing, advising [the d]efendant that 'observance of her religious beliefs forbids her from being subjected to invasive COVID-19 testing via nasal swab, and requested that she be able to take a saliva test instead.'"); *see also Federoff*, 571 F.Supp.3d at 388(finding plaintiff employees failed to detail how their purported

6

religious objection to Geisinger's COVID-19 testing requirement for vaccine-exempt employees was rooted in a religious belief).

Accordingly, Plaintiff cannot meet any prong of her *prima facie* burden, and, as such, her failure to accommodate theory fails.

b. <u>Geisinger made a good-faith effort to reasonably accommodate Plaintiff's religious belief by granting her request for an exemption to the COVID-19 vaccine</u>.

Regarding Plaintiff's religious accommodation, Plaintiff's Complaint states: "as a practical matter, Defendant actually provided no accommodation to Plaintiff at all…" (*Appx. 6*). This argument is nonsensical in light of Plaintiff's own allegations; in earlier paragraphs of her Complaint, Plaintiff admits Geisinger "acknowledged Plaintiff's aforesaid religious beliefs and thereafter **informed Plaintiff that her request for an exemption from [COVID-19] vaccination would be accommodated**, with one of the accommodation terms being that she submit to regular COVID-19 testing." (*Appx. 2 – 3*).

During her deposition, Plaintiff again confirmed she requested a religious exemption to Geisinger's COVID-19 vaccine requirement, and that **Geisinger granted her request**. (SMF¶¶38-41). In this regard, she testified:

```
                    And then Geisinger approved your
        request to be exempt from the COVID-19 vaccine.
                    Is that right?
            A.      That would be correct.  Yes.
```

(Pl. Dep. P. 27, L. 2 – 5; SMF¶40).

Even if Plaintiff could establish a *prima facie* case—which is denied—Geisinger clearly made a good-faith effort to reasonably accommodate Plaintiff's religious belief by providing her the **exact accommodation she requested**. (SMF¶¶38-41). To ensure the safety of patients, employees and the public, she was simply asked – as were all employees with exemptions – to comply with alternate steps, including regular testing and masking. There is no evidence suggesting Plaintiff made any other accommodation request.

      c.  <u>Plaintiff herself disavows any argument Geisinger somehow prevented her from complying with the terms of her religious accommodation.</u>

In her circumlocutory Complaint, Plaintiff claims:

> Defendant claimed to have granted Plaintiff a religious accommodation from its requirement that she be vaccinated for COVID-19, however, it actually failed to engage in a good faith interactive process with Plaintiff to fully apprise her of its proposed terms of accommodation and how she may comply with same, purporting that it would provide her with the means of compliance with its COVID-19 testing accommodations, but failing to actually provide same to Plaintiff, essentially trapping Plaintiff in a 'Catch-22' scenario wherein it unjustly terminated her employment following its own failure to provide Plaintiff with the means of compliance with its stated accommodation terms, thereby failing to provide Plaintiff with a reasonable accommodation for her sincerely-held religious beliefs under law.

(*Appx. 5*).

8

In other words, while Plaintiff does not claim to have had any religious objection to the **COVID-19 testing requirement**, she essentially alleges Geisinger intentionally prevented her from being able to comply with the testing requirement and then terminated her for that failure. *See Appx. 5*. She alleges that Geisinger did this in two ways: failing to communicate the terms and instructions for the testing requirement, and failing to provide the testing supplies necessary to comply with the testing requirement. (*Appx. 5*). While Plaintiff's Complaint paints a picture of an employee with absolutely no information about the testing requirement and no idea where to turn to obtain the testing supplies, **her own testimony** indisputably establishes the pure fiction of that picture. Indeed, contrary to Plaintiff's claim in this regard, Plaintiff testified as follows:

- As early as October 29, 2021, Geisinger informed Plaintiff her COVID-19 testing was required every Tuesday/Thursday, starting the week of November 8, 2021. (SMF¶44).

- Plaintiff knew that she needed a test kit to submit her self-test results to Geisinger each Tuesday/Thursday. (SMF¶47).

- Before the testing requirement went into effect, Geisinger provided (and Plaintiff received) Plaintiff's **individual instructions** as to when and where she needed to pick up her test kit (at the Kistler Learning

Center between Monday, November 1, and Wednesday, November 3, 2021). (SMF¶44).

- Plaintiff knew where the Kistler Learning Center was located, but chose not to go there to retrieve her test kit between November 1, and Wednesday, November 3, 2021. (SMF¶45).

- As early as October 29, 2021, Plaintiff received correspondence from Geisinger directing her to contact Joe Goyne at jwgoyne@geisinger.edu for testing equipment and supply needs. (SMF¶44).

- By January 2022, Plaintiff received at least **four or five prior communications from Geisinger** directing her to contact Joe Goyne at jwgoyne@geisinger.edu for testing equipment and supply needs. (SMF¶87).

- Sometime in December 2021, Plaintiff began drafting an email to Joe Goyne, but "got busy," "never ended up sending the email," and "did not contact Joe Goyne at any point during [her] employment with Geisinger." (SMF¶¶63, 122).

- Following Plaintiff's temporary period of excusal from the testing requirements after contracting COVID-19, Geisinger notified Plaintiff

of the exact date she needed to begin testing again: January 6, 2022. (SMF¶¶48-50, 64).

- Plaintiff understood that she was required to submit test results to Geisinger on January 6th, 11th, and 13th, 2022. (SMF¶¶64-65, 76, 83).

- Plaintiff failed to submit COVID-19 test results to Geisinger on the above dates because she chose not to obtain her testing supplies. (SMF¶¶65-67, 76-78, 82-83, 87-89).

- Plaintiff received a Notice from Geisinger each and every time she failed to submit test results. (SMF¶¶68, 79, 90).

- Geisinger's Notices to Plaintiff reiterated that her failure to submit test results on three required test dates would be considered her declination of the accommodations offered and would be treated as her voluntary resignation. (SMF¶¶68-70, 79-81, 90-91).

The overriding theme of Plaintiff's case is that she never received her test kit from Geisinger. Though her Complaint tries to twist the facts and allege her failure to comply with the testing requirement was somehow Geisinger's fault, Plaintiff's own testimony, above, indisputably illustrates the blame can only be placed on her. **Over two months** before Plaintiff was required to submit her first test result, she knew when and where she needed to obtain her testing supplies and who she needed to contact for testing supply needs, **but she did neither**. (SMF¶¶44-47,52).

11

Plaintiff further admits that **two other exempt employees** obtained the necessary testing supplies and complied with the testing requirements. (SMF¶¶102-118). Indeed, one of the exempt employees who obtained her testing supplies and complied with the testing requirements was **Plaintiff's sister**, who Plaintiff admits **practices the same Greek Orthodox Christian** religion. In other words, Plaintiff has absolutely no evidence that her religion played any role in her inability to simply obtain the testing supplies in the same fashion as her sister and other employees.

Unlike her sister, Plaintiff did not comply with the reasonable testing requirement and then acted surprised[2] when she was deemed to have voluntarily resigned from her position–despite the repeated notices she received. Geisinger provided Plaintiff her requested exemption to its vaccination policy, repeated information about the testing requirement and information regarding the consequences for failing to complete the testing. Plaintiff made the decision not to comply with the testing. Accordingly, Plaintiff's failure to accommodate claim fails.

### 2.  *Plaintiff's disparate treatment theory fails.*

Title VII makes it an "unlawful employment practice for an employer … to discriminate against any individual…, because of such individual's…religion..." *see*

---

[2] Despite Plaintiff's admission that she received an Initial Notice and Second Notice of her failure to submit test results on two required test dates, and that both Notices reminded her that three (3) failures would result in termination, Plaintiff contends she was "shocked" to have been informed of her termination for non-compliance with testing. (*Appx. 4*).

*Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Where, as here, a plaintiff has no direct evidence of discrimination, but claims an employer's stated justification for an employment decision is false, the analytical framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies. *See Connelly*, 809 F.3d at 787-88; *Ogden v. Keystone Residence*, 226 F.Supp.2d 588, 602 (M.D. Pa. 2002); *Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999). Under *McDonnell Douglas*, the employee must first establish a *prima facie* case of discrimination. *Sarullo v. U.S. Postal Service*, 352 F.3d 789, 797 (3d Cir. 2003).  Second, upon such a showing by the employee, "the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the [adverse decision]." *Id.* If the employer meets this burden, the presumption of discriminatory action is rebutted, and the employee must then demonstrate–as the third and final step–the employer's articulated reason was not the actual reason for the unfavorable job action, but rather pretext for discrimination. *Id.* At 797.

To state a *prima facie* case, Plaintiff must establish: (1) she is a member of a protected class; (2) she is qualified for the position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of unlawful discrimination. *See Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). To satisfy the fourth element, plaintiffs may show that "nonmembers of the protected class were treated more favorably." *Goosby v. Johnson & Johnson*

13

*Med. Inc.*, 228 F.3d 313, 319 (3d Cir. 2000). Plaintiff cannot satisfy the fourth prong and, therefore, cannot establish a *prima facie* case of discrimination.

a. <u>As an initial matter, only Plaintiff's termination constitutes an "adverse employment action."</u>

Regarding the third prong of Plaintiff's *prima facie* case, the only adverse employment action she alleged is that her employment was terminated by Geisinger. An adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ogden*, 226 F.Supp.2d at 602-03. Plaintiff has made no allegations regarding any other action by Geisinger—aside from her termination—which altered the terms of her employment. Accordingly, Plaintiff's termination is the only alleged adverse employment action.

b. <u>Plaintiff cannot establish her termination occurred under circumstances that give rise to an inference of unlawful discrimination</u>.

Plaintiff admits she has no direct evidence of discrimination by **<u>any Geisinger employee</u>**:

14

> Do you believe that there were any particular employees involved that had any type of bias against you on the basis of your religion?
>
> A.    I have no -- I have no, like, evidence in those words of explicit bias where they've approached me and said it to my face. No.

(Pl. Dep. P. 124, L. 3 – 10; SMF¶126).

To be clear, Plaintiff has not cited to **anything religiously based**. Instead, Plaintiff harps on the fact that she did not have her testing supplies. However, because Plaintiff **admits** she received specific instructions about when and where to retrieve her testing supplies in November 2021, but failed to do so, this fact only gives rise to an inference that Plaintiff does not follow instructions, not that she was subjected to retaliation. (SMF¶¶44-47).

While a plaintiff may meet this fourth prong by showing that "nonmembers of the protected class were treated more favorably," Plaintiff cannot do so here. *See Goosby*, 228 F.3d at 319. Fatal to her claims, Plaintiff admits her sister, "Marina," works for Geisinger; has the same religion as Plaintiff (Greek Orthodox Christian); received a religious exemption to the COVID-19 vaccine requirement; obtained her test kit from Geisinger; complied with her testing requirements; and remains employed by Geisinger. (SMF¶¶102-108). Another Geisinger employee, "Tara," also requested and received a religious exemption to the COVID-19 vaccine

requirement. (SMF¶¶109-111). Like Plaintiff, "Tara missed two required test submissions; however, Tara obtained a test kit from Geisinger and Plaintiff admits that Tara **did not miss a third required submission**. (SMF¶¶111-117). Accordingly, Tara did not fail to comply with the terms of her religious accommodation, and she remains employed by Geisinger. (SMF¶¶117-118).

Plaintiff has not cited to any other Geisinger employee—of any religion—who missed three required test submissions and was not separated from employment, nor has she provided any other evidence of discrimination. Accordingly, Plaintiff fails to show her termination occurred under circumstances that give rise to an inference of unlawful discrimination, and her disparate treatment claim fails.

### c. Geisinger had legitimate, nondiscriminatory reasons for any action it took and Plaintiff cannot show pretext.

Even if Plaintiff could establish a *prima facie* case–which she cannot–any action taken by Geisinger with respect to Plaintiff was based on legitimate, nondiscriminatory reasons. Plaintiff admits Geisinger provided her requested accommodation—an exemption to the COVID-19 vaccine requirement. (SMF¶¶38-41). As a condition of this accommodation and Plaintiff's continued employment, she and all other employees exempt from the vaccine were required to submit testing results to Geisinger each Tuesday/Thursday. (SMF¶¶42,44,47). Any exempt employee failing to submit test results on three occasions was considered to have rejected the offered accommodation and to voluntarily resign from their position.

16

(SMF¶24). Plaintiff admits she failed to submit her test results on three required test dates and, accordingly, she was deemed to voluntarily resign from her position. (SMF¶¶67,70,78-80,89-91).

Plaintiff cannot show that Geisinger's stated reason is pretext where she agrees submitting test results each Tuesday/Thursday was a condition of employment for all employees who received a religious exemption from the COVID-19 vaccine requirement, including her; that exempt employees' failure to submit required test results on **three** occasions would result in termination; and she failed to submit required test results on three occasions. (SMF¶¶42,44,47,67,70,78-80,89-91). As articulated above, Plaintiff cannot point to any other Geisinger employee—of any religion—who was treated more favorably. To the contrary, the record evidence illustrates everyone was treated in the exact same fashion. Accordingly, Plaintiff's discrimination claim fails.

### 3.  Plaintiff's quid pro quo theory fails.

Plaintiff's Complaint alleges she is proceeding on a "*quid pro quo*" theory of liability. (*Appx. 5*). In support, Plaintiff alleges, after her termination, a representative from Geisinger "insinuate[ed] that Plaintiff could be re-hired if she abandoned, violated, or otherwise acted inconsistently with her sincerely held religious beliefs against the use of a COVID-19 vaccine product." (*Appx. 5*). This allegation is **factually false and legally insufficient**.

17

First, Plaintiff confirmed that no Geisinger representatives made any statements to her asking her to obtain the COVID-19 vaccine against her religious beliefs:

Q.       Let me ask you something different.  Did Ms. Rarig make any statements to you regarding the vaccine?
A.       Ms. Rarig did not, if I recall correctly, make any statements regarding the vaccine.

(Pl. Dep. P. 118, L. 14 – 19).

Q.       Did any employees of Geisinger

make any statements to you regarding taking the vaccine?
A.       Not that -- oh.  I believe with Erin Winn in the HR department, I asked her if I could -- this was on the day of my termination, I asked if -- if I would be eligible to be rehired, and she said we would have to have a discussion regarding the COVID-19 vaccine and it's exemption process.

(Pl. Dep. P. 116, L. 25; P. 117, L. 2 – 10).

Next, even if Plaintiff had not refuted her own claim, it is legally insufficient because the Third Circuit does not recognize a "*quid pro quo*" theory for religious discrimination claims. "In the Third Circuit, employees may rely on two different

18

theories to establish a claim for religious discrimination: 'disparate treatment' ***on account of religion***, or 'failure to accommodate' ***religious*** beliefs." *Abramson v. William Paterson College of N.J.*, 260 F.3d 265, 281 (3d Cir. 2001) (emphasis added). In *Blackwell v. Lehigh Valley Health Network*[3], the Court considered a Motion to Dismiss where the plaintiff alleged the defendant's conduct constituted unlawful employment discrimination in violation of Title VII "under the theories of hostile work environment, failure to accommodate, *quid pro quo*, disparate treatment, and retaliation." *Blackwell*, 2023 WL 5807840 at \*4. The Court granted defendant's Motion to Dismiss, explaining the plaintiff's Amended Complaint failed to plead a cause of action for religious discrimination under any of these theories of liability. *Id.* at \*10, n.1.

With respect to the *quid pro quo* theory of liability, the *Blackwell* Court cited *Wallace v. City of Philadelphia*, 2010 WL 1730850 (E.D. Pa. 2010), and explained the Third Circuit recognizes only two different theories of religious discrimination claims under Title VII: disparate treatment and failure to accommodate. *Blackwell*, 2023 WL 5807840 at \*10, n.1 (citing *Wallace*, 2010 WL 1730850 at \*21). "Accordingly, this Court 'declines to write or produce new law by finding a claim for *quid pro quo* religious harassment exists.'" *Id*.

---

[3] Plaintiff's counsel is familiar with the *Blackwell* Court's ruling on quid pro quo religious discrimination claims because he served as Ms. Blackwell's counsel in that case.

19

Because the Third Circuit does not recognize a *quid pro quo* theory of religious discrimination under Title VII, this Court must reach the same conclusion and dismiss Plaintiff's *quid pro quo* claim with prejudice.

### 4. Plaintiff's retaliation claims under Title VII/the PHRA fail as a matter of law.

Plaintiff's Complaint alleges, only in passing, that she is proceeding on her religious discrimination claims on a "retaliation" theory of liability. (*Appx. 7*). This theory/claim fails for at least three (3) reasons.

#### a. Plaintiff failed to exhaust her administrative remedies with respect to any claim of retaliation under Title VII or the PHRA.

First and foremost, Plaintiff failed to exhaust her administrative remedies with respect to any claim of retaliation under Title VII or the PHRA. Prior to seeking judicial relief under the PHRA, the ADEA, or Title VII, a plaintiff must exhaust all administrative remedies. *Kopko v. Lehigh Valley Health Network*, 776 Fed.Appx. 768, 773 (3d Cir. 2019)(citing *Colgan v. Fisher Sci. Co.*, 935 F.2d 1407, 1414 (3d Cir. 1991).

A claim has been administratively exhausted when the specifics of a charge with the administrative agency "fairly encompass a claim" and would put the agency and the defendant employer "on notice" of that claim. *Mammen v. Thomas Jefferson Univ.*, 462 F.Supp.3d 518, 529 (E.D. Pa. 2020). The ensuing suit is limited to claims that are within the scope of the initial administrative charge. *Id.* The Third Circuit

20

has explicitly declined to adopt a rule that a plaintiff's allegation of discrimination in an administrative charge also *per se* exhausts any retaliation claim. *See Waiters v. Parsons*, 729 F.2d 233, 237 n.10 (3d Cir. 1984).

In her administrative charge, Plaintiff solely alleged: "I allege that I have been discriminated against and believe that [Geisinger] failed to accommodate me by not providing the testing supplies and discriminated against me because of my religion (Greek Orthodox), in violation of Title VII..." (*Appx. 332 – 333*). Nowhere in Plaintiff's administrative charge exists any allegation that Geisinger retaliated against Plaintiff **for any reason**. *See Appx. 332 – 334*. Accordingly, Plaintiff's religious discrimination claim on the theory of "retaliation" must be dismissed. *See Mammen*, 462 F.Supp.3d at 529 ("Failure to exhaust administrative remedies is not a jurisdictional defect, but rather, provides a basis for dismissal under Rule 12(b)(6)."); *Kopko v. Lehigh Valley Health Network*, 776 Fed.Appx. 768, 773-74 (3d Cir. 2019)(upholding the Court's dismissal of plaintiff's age retaliation claim where plaintiff's administrative charge included only a general allegation that the defendant discriminated against her because of her age, but failed to mention any opposition to discrimination that could have resulted in the employer's retaliating against her).

21

       b. <u>Even if she had exhausted her administrative remedies, Plaintiff cannot establish a *prime facie* case of retaliation.</u>

Any retaliation claims pursuant to Title VII and the PHRA follow the *McDonnell Douglas* burden-shifting framework set forth in Section V.A.2.a, above.

"To establish a *prima facie* case of retaliation, a plaintiff must tender evidence that: '(1) he engaged in activity protected by Title VII; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action.'" *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006), *as amended* (Sept. 13, 2006). Even if Plaintiff had exhausted her administrative remedies with respect to a retaliation claim—which she has not—she cannot establish even a *prima facie* case of retaliation, let alone that the legitimate, business reasons for Geisinger's actions were somehow pretextual.

       **i.    Plaintiff cannot show she engaged in any protected activity.**

The anti-retaliation provision of Title VII protects those who participate in certain proceedings (the "participation clause") and those who oppose unlawful discrimination. *Moore*, 461 F.3d at 341 (citing *Slagle v. County of Clarion*, 435 F.3d 262, 266 (3d Cir. 2006). "'Opposition' to discrimination can take the form of 'informal protests of discriminatory employment practices, including making complaints to management.'" *Moore*, 461 F.3d at 343 (quoting *Curay-Cramer v.*

22

*Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006). An employee fails to state a Title VII retaliation claim based on an employer's denial of a religious accommodation request "because 'merely requesting a religious accommodation is not the same as opposing the allegedly unlawful denial of a religious accommodation.'" *Al Refat v. Franklin Fin. Servs. Corp.*, 2021 WL 2588789 at *6 n. 6 (M.D. Pa. 2021). Accordingly, Plaintiff's request for accommodation does not constitute protected activity under Title VII, and she cannot establish a *prima facie* claim of retaliation.

Further, to constitute protected activity for purposes of a retaliation claim, an employee's complaints or protests must be more than "general complaints of unfair treatment." *Webb v. Merck & Co., Inc.*, 450 F.Supp.2d 582, 600 (E.D. Pa. 2006). A general complaint of unfair treatment is precisely what Plaintiff alleges she made to Geisinger's HR after her termination. (SMF¶¶92-93). Therefore, this alleged HR complaint likewise fails to constitute protected activity under Title VII, and Plaintiff cannot establish a *prima facie* claim of retaliation.

ii.     **Plaintiff cannot show any causal connection between any alleged protected activity and any adverse employment action.**

Even if Plaintiff engaged in protected activity—which is denied—Plaintiff cannot show a causal connection for purposes of a retaliation claim for the same reasons she cannot establish that her termination occurred under circumstances that

23

give rise to an inference of unlawful discrimination. Accordingly, the arguments outlined above in Sections V.A.2.a.i-ii are incorporated herein by reference.

> ### iii. Geisinger had legitimate, nondiscriminatory reasons for any action it took with respect to Plaintiff, and Plaintiff cannot show pretext.

Geisinger easily meets its burden of establishing legitimate, non-retaliatory reasons for its actions, which Plaintiff cannot show are pretextual. *See Bey v. Pocono Med. Ctr.*, 2023 WL 8602284, at *7-8 (M.D. Pa. 2023) (finding the defendant-employer could satisfy its burden where the plaintiff-employer was terminated for his failure to comply with its COVID-19 vaccination policy). For judicial efficiency, Geisinger incorporates by reference its arguments in Section V.A.2.a.iii, above, which also demonstrate Geisinger had legitimate, nondiscriminatory reasons for any action it took with respect to Plaintiff, and that Plaintiff cannot show pretext. Accordingly, any religious discrimination claims advanced by Plaintiff based on the legal theory of "retaliation" fail and must be dismissed.

## VI.    CONCLUSION

Based on the foregoing, Plaintiff's claims are legally improper and Geisinger respectfully requests this Court dismisses Plaintiff's Complaint in its entirety.

Respectfully submitted,

BUCHANAN INGERSOLL & ROONEY PC

By:  *s/Anthony (T.J.) Andrisano*
     Anthony (T.J.) Andrisano, Esq.
     PA I.D. No. 201231
     Alyssa K. Stouder, Esq.
     PA I.D. No. 324468
     409 North Second Street, Suite 500
     Harrisburg, PA  17101
     Phone: (717) 237-4800
     Email: anthony.andrisano@bipc.com
     Email: alyssa.stouder@bipc.com
     *Attorneys for Defendant*

Date: April 16, 2024

25

## <u>CERTIFICATE OF COMPLIANCE PURSUANT<br>TO LOCAL RULE 7.8(b)(2)</u>

Pursuant to Local Rule 7.8(b), it is hereby certified that the foregoing Brief in Support of Defendant's Motion for Summary Judgment is 4,876 words in length (exclusive of the tables of contents and citations, this certificate, and the certificate of service).

s/<u>*Anthony (T.J.) Andrisano*</u><br>Anthony (T.J.) Andrisano<br>Attorney for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and complete copy of the foregoing document was transmitted to the Court ***electronically*** for filing and for electronic service upon the following:

Daryl J. Kipnis, Esquire
Kipnis Law Offices
280 Medford-Mt. Holly Rd.
Medford, NJ 08055
daryl@kipnislawoffices.com
*Counsel for Plaintiff*

 s/*Krista M. Kiger*
Krista M. Kiger
Paralegal

Dated: April 16, 2024