UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANNA CARELLAS, | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:23-1062 |
| v. | : | (JUDGE MANNION) |
| GEISINGER WYOMING VALLEY MEDICAL CENTER, | : | |
| | : | |
| Defendant | : | |
| | : | |

## MEMORANDUM

Pending before the court is the defendant's motion for summary judgment. (Doc. 35). Based upon the court's review of the motion and related materials, the defendant's motion will be **GRANTED**.

By way of relevant procedural background, the plaintiff filed the instant action on December 28, 2022, in the United States District Court for the Eastern District of Pennsylvania. In her complaint, the plaintiff alleges she was discriminated against during the course of her employment when she requested and was denied an exemption from receiving the COVID-19

1

vaccine based upon her religious beliefs. (Doc. 1).[1] The matter was transferred to the Middle District on June 26, 2023.

After a period of discovery, on April 16, 2024, the defendant filed the pending motion for summary judgment (Doc. 35) along with a supporting brief (Doc. 36) and a statement of undisputed material facts with exhibits (Doc. 37). When the plaintiff failed to respond to the defendant's motion, the court issued an order to show cause as to why the defendant's motion should not be granted. (Doc. 38). The court directed that the plaintiff's response was due on or before August 2, 2024. On August 3, 2024, after the time designated, the plaintiff filed a brief in opposition to the defendant's motion along with a response to the defendant's statement of material facts. (Doc. 39).[2] The defendant filed a reply brief on August 19, 2024. (Doc. 40). The defendant's motion is now ripe for disposition.

---

[1] While the plaintiff has alleged in her complaint that the defendant engaged in unlawful employment discrimination on the basis of religion under the legal theories of "failure to accommodate," "disparate treatment," "*quid pro quo*," and "retaliation," she has abandoned any claim of "*quid pro quo*" discrimination and retaliation in her briefing and instead has argued only that "she has raised a genuine issue of material fact under theories of 'failure to accommodate' and 'disparate treatment' so as to survive Summary Judgment, ..." (Doc. 39, p. 6). Therefore, the court will consider only those claims herein.

[2] The defendant asks the court to strike the plaintiff's opposing materials as untimely because they were filed without explanation after the

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the nonmoving party and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995).

At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; See also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). But the

---

deadline set by the court in its order to show cause. While the court certainly does not condone a party's noncompliance with its orders and would be well within its right to strike the plaintiff's filings, in the interest of justice the court will consider the record as a whole, including the plaintiff's materials, when considering the defendant's motion for summary judgment.

court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. *See Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *See also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure

"necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

The defendant's undisputed statement of materials facts, as supported by the record, establish that Geisinger Health System is a regional healthcare provider with facilities located throughout Pennsylvania.[3] The defendant is a hospital within the Geisinger Health System located in Wilkes-Barre, Pennsylvania and, as a health care provider, the defendant has a mandatory vaccine policy which requires nurses and other healthcare providers to receive certain mandatory vaccines. This policy requires nurses and other health care providers to

---

[3] The plaintiff deems all of the defendant's statements of material fact "admitted," but adds a general qualification to the substantive facts stating that she "denies that Defendant followed its own policies and procedures in the instance of her own religious accommodation, and has indicated in her deposition testimony that managers of other employees granted religious accommodations took certain actions to affirmatively assist their own direct reports in complying with the COVID-19 testing requirements associated with their own religious accommodations, which was not done in Plaintiff's instance, and that other employees were extended courtesies and leniency in connection with COVID-19 testing that was denied to Plaintiff." In support of this, the plaintiff provides a string citation to various portions of her own deposition testimony. The plaintiff's qualification is nothing more than a reiteration of the allegations of her complaint. Moreover, upon review, the plaintiff's qualification is contradicted both by other portions of her own deposition as well as other evidence in the record. Given this, the court takes the substantive stated facts as admitted to by the plaintiff directly from the defendant's undisputed statement.

receive annual influenza vaccines, which is a common policy for hospital employers. In 2021, the defendant added the COVID-19 vaccine to its mandatory vaccine policy, which was also a common policy for hospital employers at the time. The defendant's employees are able to request exemptions to the mandatory vaccine policy for medical or religious reasons.

Employees with approved exemptions to the COVID-19 vaccine requirement were enrolled in the defendant's COVID-19 vaccine exemptions program. This program required the exempt employees to perform self-testing for COVID-19 using a Quidel QuickVue antigen test kit provided by the defendant. The exempt employees were required to perform their test and submit the results every Tuesday and Thursday beginning the week of November 8, 2021. Each Tuesday and Thursday, the exempt employees received email reminders to submit their results that day.

When an exempt employee submitted their results, they received an email confirming the defendant's receipt of the results. Exempt employees were excused from submitting results on the scheduled days if they had pre-approved and scheduled paid time off, a holiday, or an absence under the Family and Medical Leave Act ("FMLA"). In addition, if an exempt

employee tested positive for COVID-19, the employee was excused from submitting their self-testing results for a period of ninety (90) days following the positive result.

If an exempt employee did not timely submit their self-testing results, the defendant notified the employee's manager to confirm whether the employee had a valid reason for the missed test results. If no valid reason was provided, the employee was issued a written warning email, since compliance with the terms of the exemption program was a condition of the employee's employment. The defendant considered three (3) missed testing submissions to be the employee's refusal of the accommodations offered under the exemption program and a voluntary resignation from their position with the defendant.

For those employees who had received an exemption, the defendant sent an email containing instructions for getting their COVID-19 testing equipment. Employees were instructed to contact an individual by the name of Joe Goyne with any questions about getting COVID-19 test kits. In addition, employees were advised of their responsibilities with regard to testing and testing expectations. If there were test kit concerns, employees were directed to first reach out to the testing equipment vendor and, if unable to resolve those issues, visit one of the defendant's lab locations to

complete their testing requirements for the day. A hyperlink was provided to the employee testing information website. All employees were directed to inform their managers of any issues that might impact their ability to complete the testing steps so that they could assist in resolving the issues.

After having been employed by the defendant as a nurse extern in 2020, in August of 2021, the plaintiff began working as a full-time registered nurse in the defendant's Progressive Care Unit which was a patient-facing position with duties including providing patient care and education, interacting with other members of the healthcare team to provide individualized plans of care, and taking care of patients who required drips, fluids, and intravenous medications. The plaintiff's supervisor was Stephanie Rarig.

On or about August 20, 2021, the plaintiff requested a religious exemption to the defendant's influenza and COVID-19 vaccine requirements informing the defendant that the vaccines' affiliation with abortive fetal cells and cell lines conflicted with her Orthodox Christian beliefs. The plaintiff testified that the defendant approved her request for a religious exemption to the COVID-19 vaccine requirement, and the record demonstrates that the plaintiff was notified by email dated September 16, 2021, that her religious vaccination exemption request for the vaccine was

approved. The email advised the plaintiff that, as a part of her accommodation, she would be required to comply with alternate steps, including regular testing and masking, and that she would receive additional information in that regard. Later, on or about October 18, 2021, the plaintiff was notified that her religious vaccination exemption for the influenza vaccine was also approved.

On October 29, 2021, the defendant sent the plaintiff an email indicating that she would have to submit the results of COVID-19 testing each Tuesday and Thursday, beginning November 8, 2021. The plaintiff was advised that in order to get the necessary testing supplies she would be required to show her employment identification badge. She was further advised that she could get the kits at the GWV Kistler Learning Center from Monday, November 1, 2021, through Wednesday, November 3, 2021, from 7:00 am through 4:00 pm, and that any questions regarding test kit distribution should be directed to Joe Goyne.[4]

Despite the email of October 29, 2021, on or about October 7, 2021, the plaintiff had contracted COVID-19 and, in accordance with the

---

[4] The plaintiff did not pick up any kits between November 1, 2021, and Wednesday, November 3, 2021, and did not contact Joe Goyne with any questions about obtaining testing kits.

defendant's policy, the plaintiff was temporarily excused from submitting self-testing results for a period of ninety (90) days following her positive COVID-19 test. The plaintiff's temporary excusal period ended on January 5, 2022. The plaintiff was reminded of this by email dated December 14, 2021. The email further advised the plaintiff to contact Joe Goyne for testing equipment and supply needs. The plaintiff did not have a COVID-19 test kit when she received the December 14, 2021, email, but she knew she had to obtain a test kit in order to complete the required self-test in January 2022. Although she had been advised to do so, the plaintiff did not contact Joe Goyne and did not obtain any test kits after receiving the December 14, 2021, email.

On December 28, 2021, the defendant sent the plaintiff an email reminding her of the need to complete self-testing and submit the results within the required timeframe every Tuesday and Thursday. The email again advised the plaintiff to contact Joe Goyne for any supply needs. The plaintiff did not possess a test kit on December 28, 2021, when she received the email, nor did she contact Joe Goyne to obtain a test kit after receiving the December 28, 2021, email. It was the plaintiff's testimony that she began to draft an email to Joe Goyne some time in December, but got busy and never sent the email.

With the plaintiff's temporary excusal period ending on Wednesday January 5, 2022, she was required to submit her first COVID-19 self-test results online on Thursday, January 6, 2022. The plaintiff neither obtained testing supplies, nor submitted her self-testing results on that date.

On January 7, 2022, the defendant sent the plaintiff an initial notice stating that she failed to submit her testing results on January 6, 2022, with no valid excuse. The plaintiff was reminded that she was required to submit results each Tuesday and Thursday as a condition of her accommodation and that her failure to submit self-testing results on three (3) occasions would be considered her declining the accommodation offered and would be treated as her voluntary resignation from her position. The plaintiff took no action after receiving this initial notice.

On Monday, January 10, 2022, the plaintiff received an email reminding her to complete all testing steps and submit her results every Tuesday and Thursday. The plaintiff was, once again, advised to contact Joe Goyne for testing supplies. After receiving this email, although the plaintiff did not have testing supplies, she neither contacted Joe Goyne nor obtained any test kits.

The plaintiff was next required to submit self-testing results on Tuesday, January 11, 2022, but failed to do so. As a result, on January 13,

2022, the defendant sent the plaintiff a second notice email confirming that she failed to submit her results on January 11, 2022, with no valid excuse. She was again reminded to submit her results each Tuesday and Thursday as a requirement of her accommodation and that her failure to submit results on three (3) occasions would be considered as her declining the accommodation offered and would be treated as her voluntary resignation from her position. The plaintiff did not contact Joe Goyne and she did not obtain a test kit after receiving this second notice.

Thursday, January 13, 2022, was the next date on which the plaintiff was required to submit her self-testing results. Prior to this date, the plaintiff had not contacted Joe Goyne and she had not obtained a testing kit. Instead, that morning, the plaintiff asked Veronica Banyar, a Clinical Coordinator who was not the plaintiff's supervisor and not familiar with her history, for assistance in obtaining a test kit. The following day, on January 14, 2022, Ms. Banyar messaged the plaintiff indicating that the plaintiff should contact Joe Goyne to obtain a test kit. The plaintiff failed to submit her results for a third time on January 13, 2022.

On January 17, 2022, the defendant sent the plaintiff a dismissal letter confirming that she had failed to submit self-testing results for a third time with no valid excuse. The letter notified the plaintiff that, in accordance

with its prior communications, the plaintiff's failure to submit self-testing results on three (3) occasions was deemed as her voluntary resignation from her position, effective January 17, 2022. After her separation from employment, the plaintiff complained to the Human Resources Department that she did not have COVID-19 testing supplies. The plaintiff inquired as to whether she would be eligible for rehire and was informed that there would need to be a discussion with respect to compliance with the COVID-19 vaccine exemption program.

In March 2022, the plaintiff applied for four (4) registered nurse positions with the defendant, one of which was as an Oncology RN. That same month, the defendant accepted the plaintiff's application to work as an Oncology RN and issued her a job offer for that position. The plaintiff rejected the offer on the basis that she had not been considered for the other three (3) RN positions for which she applied.

The plaintiff testified that she is aware that three (3) other employees requested religious exemptions to the defendant's COVID-19 vaccine requirement: her sister, Marina; RN Tara McGuire; and an RN named Tina[5]. The plaintiff indicated that Marina's and Tara's requests for exemptions

---

[5] The plaintiff could not recall Tina's last name.

were approved, but she did not know if Tina's exemption request was approved.

With respect to Marina, she had the same religion as the plaintiff, Orthodox Christian. Marina requested a religious exemption to the defendant's COVID-19 vaccine policy, which was granted. Marina obtained her test kits from the defendant and submitted the results of her tests to the defendant each Tuesday and Thursday. Marina continues to be employed by the defendant.

Tara was an RN in the Progressive Care Unit. She requested a religious exemption to the vaccine policy which was granted. Tara obtained her test kits from the defendant. She missed a total of two required test submissions. She was sent an initial notice after her first missed test and a second notice after her second missed test. Tara did not miss a third required test submission. She remains employed by the defendant.

The plaintiff argues that the evidence that supports her discrimination and retaliation claims is that "[she] was never accommodated. [She] never received testing supplies." She testified that she does not know why she did not receive supplies, but admits that she received at least four or five messages informing her to contact Joe Goyne for supplies. She further admits that she never contacted Joe Goyne for supplies. The plaintiff

testified that her supervisor, Stephanie Rarig, did not have sufficient involvement with any of the employees she supervised and that other unknown and unnamed employees were dissatisfied with Ms. Rarig as a supervisor. The plaintiff testified, however, that she has no evidence that Ms. Rarig had any bias against her on the basis of her religion. She further testified that she had no evidence that any other exempt employee missed three (3) required test results and was not separated from employment.

In considering the plaintiff's claims, Title VII and the PHRA[6] prohibit religious discrimination in employment. Under these laws, employees may assert different theories of religious discrimination, including failure to accommodate and disparate treatment. *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 281 (3d Cir. 2001).

To establish a *prima facie* case of failure to accommodate, "the employee must show: (1) she holds a sincere religious belief that conflicts with a job requirement; (2) she informed her employer of the conflict; and (3) she was disciplined for failing to comply with the conflicting requirement." *EEOC v. GEO Grp., Inc.*, 616 F.3d 265, 271 (3d Cir. 2010)

---

[6] "[T]he PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002).

(internal quotation marks and citation omitted). If the plaintiff makes such a showing, "[t]he burden [then] shifts to the employer to show either (1) it made a good-faith effort to reasonably accommodate the religious belief, or (2) such an accommodation would work an undue hardship upon the employer and its business." *Id.* (citation omitted).

Here, the plaintiff cannot establish a *prima facie* case for failure to accommodate. In fact, the plaintiff indicates that she had a sincere religious belief that conflicted with the defendant's influenza and COVID-19 vaccination requirements. She indicates that she informed the defendant of her conflict and requested an exemption from its vaccination requirements. There is no indication that the plaintiff made any other accommodation request other than to be exempt from receiving the vaccination. And, despite her claiming on one hand that the defendant provided her "no accommodation," the plaintiff admits in both her complaint and in her deposition testimony that the defendant granted her request to be exempt from its COVID-19 vaccination requirement.

As part of the exemption accommodation granted the plaintiff, the record demonstrates that she was required, among other things, to perform self-testing for COVID-19 and submit the results of the testing every Tuesday and Thursday. The plaintiff admits that she received numerous

16

correspondence reminding her of this requirement, and that she was made aware that her failure to submit test results on three (3) occasions would be considered as her declining the accommodation offered and would be treated as her voluntary resignation. The plaintiff further admits that she failed to submit test results on three (3) occasions. The plaintiff acknowledges that it was for this reason and not because she did not receive the vaccination that the plaintiff was separated from her employment.

In her complaint, the plaintiff essentially lays blame for her not submitting the testing results on the defendant. To this extent, she alleges that the defendant failed to communicate the terms and instructions for the testing requirement and failed to provide the testing supplies necessary to comply with the testing requirement. The undisputed facts set forth above belie the plaintiff's allegations. The plaintiff herself admitted in her deposition testimony that she was informed of the requirement of self-testing and that testing results were to be submitted every Tuesday and Thursday. The plaintiff admitted in her deposition testimony that she was given instructions and to where and when she could pick up her test kits and repeatedly informed who she would need to contact with any concerns. Each time the plaintiff failed to comply with the self-testing requirements,

she admits that she received notice from the defendant advising her of the consequences of future failures to meet the requirement and again advising her on how to comply. The facts of this case demonstrate that it was not the defendant who bears the blame for the plaintiff's failure to submit the required test results, but it is the plaintiff herself who bears the blame for not submitting the results. The plaintiff knew of all of the self-testing requirements and had all of the information she needed to meet those requirements. She simply didn't do so.[7]

With respect to the plaintiff's disparate impact claim, in order to establish the *prima facie* case on this theory, she must show: (1) that she is a member of a protected class; (2) that she was qualified for the position; (3) that she was a victim of an adverse employment action; and (4) that "the action occurred under circumstances that could give rise to an inference of

---

[7] The court notes that, although the plaintiff claims that she was discriminated against because of her religion, she admits that her sister, who is of the same religion, requested and was granted an exemption by the defendant. She further admits that her sister obtained testing kits and complied with the testing requirements of the accommodation. The plaintiff admits that her sister is still employed with the defendant. These facts further contradict the plaintiff's claim that the defendant discriminated against her based upon her religion or that her religion played any role in her inability to comply with the self-testing requirements.

intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).

Here, the plaintiff cannot demonstrate that her separation from the defendant's employ occurred under circumstances that could give rise to an inference of discrimination. Specifically, the plaintiff has no evidence that any other employee of any religion who missed three (3) required test submissions was treated any differently from her. In other words, regardless of religion, any employee who was granted an exemption and missed three (3) required test submissions was separated from employment. Those employees who were granted an exemption and complied with the requirement for testing submissions are still employed with the defendant. The fact is here that the record demonstrates that the plaintiff was not separated from employment for any discriminatory reason, but was separated from employment because she failed to comply with the requirements of the accommodation she requested and was granted.

In light of the foregoing, the plaintiff has failed to establish a *prima facie* claim under either a failure to accommodate or a disparate impact theory. The defendants are therefore entitled to summary judgment with respect to the plaintiff's claims. An appropriate order shall issue.

_____
MALACHY E. MANNION
United States District Judge

**DATED: November 13, 2024**
23-1062-01